**This order is SIGNED.**



**Dated: July 14, 2016**

**R. KIMBALL MOSIER**
**U.S. Bankruptcy Judge**



# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re:<br><br>Adam L. Peeples and<br>Jennifer K. Peeples,<br><br>                    Debtors. | Bankruptcy Number: 14-23970<br><br>Chapter 7<br><br>Judge R. Kimball Mosier |
| Adrian J. Lee and<br>Angela L. N. Lee,<br><br>                    Plaintiffs,<br><br>v.<br><br>Scott J. McCardle, an individual, and<br>Scott J. McCardle, trustee of the Jack<br>and Ruth McCardle Trust,<br><br>                    Defendants. | Adversary Proceeding No. 14-2159 |

**MEMORANDUM DECISION**

The central question in this declaratory judgment action is the scope of the automatic stay. This adversary proceeding does not affect Adam and Jennifer Peeples (Debtors), the chapter 7 trustee, or her administration of the bankruptcy estate. Other than the plaintiffs, Adrian J. Lee and Angela L. N. Lee, it does not affect any of the Debtors' creditors. This is a fight

between the Lees, or more correctly Adrian Lee (Lee), and a third party, Scott J. McCardle (McCardle). There is no basis for this Court to exercise jurisdiction under 28 U.S.C. § 1334, except that the Lees contend that they are entitled to protection under 11 U.S.C. § 362.[1] The Lees assert that McCardle violated the § 362 stay by obtaining a judgment against Lee after the Peepleses had filed bankruptcy. The Lees argue that the automatic stay is so broad that it stays third-party actions against a creditor simply because the creditor was suing that third party with the subjective intent to recover a claim against the debtor.

The matters before the Court are the Lees' motion for summary judgment, McCardle's motion for summary judgment and McCardle's motion for attorney's fees. Having considered the arguments of counsel, the Joint Statement of Undisputed Facts,[2] and the record in this case, the Court makes the following findings and conclusions. This memorandum decision constitutes this Court's statement pursuant to Fed. R. Civ. P. 52(a) and 56(a) of its reasons for denying the Lees' motion for summary judgment, granting McCardle's motion for summary judgment, and denying McCardle's motion for fees.

### I.  JURISDICTION

The Lees commenced this adversary proceeding, seeking a declaratory judgment that the automatic stay is applicable to a state court proceeding and seeking damages under § 362(k)(1). This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 157(a) and (b)

---

[1] All subsequent statutory references are to Title 11 of the United States Code unless otherwise indicated.

[2] Joint Statement of Undisputed Facts, Docket No. 72.

and § 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(G), and the Court may enter a final order. Venue is appropriate under 28 U.S.C. § 1409.

## II. UNDISPUTED FACTS

**A. The Lees' Claims Against the Peepleses.**

The Lees have two state court judgments against the Peepleses. In an effort to enforce these judgments, the Lees obtained writs of garnishment directed to McCardle as trustee of the Jack and Ruth McCardle Trust (Trust). In response to the garnishment interrogatories, the Trust denied holding any of Adam Peeples's property except for a few inconsequential household items. The Trust maintains that Adam Peeples's beneficial interest in the Trust was terminated prior to the garnishment proceedings.

The Trust was created on May 11, 1991 by Jack and Ruth McCardle. Jack and Ruth were the trustees and primary beneficiaries of the Trust. Upon the death of both Jack and Ruth, McCardle was to become the trustee. On June 3, 1993, Jack and Ruth signed a memorandum amending the Trust. Among other things, this memorandum provided that upon the death of both Jack and Ruth, the Trust would be distributed 1/3 to McCardle, 1/3 to Patti Ann Peeples, and 1/3 would be divided equally among Jack and Ruth's grandchildren: Adam L. Peeples, Sarah C. Peeples, and Aaron D. Peeples. Jack died on February 1, 2008. On September 17, 2008, Ruth signed a memorandum purporting to change the Trust to provide that after paying debts, the Trust would be divided equally between McCardle and Patti Ann, thus eliminating the grandchildren's beneficial interests.

**B. Lee's Claims Against McCardle.**

Lee took exception to the Trust's answers to the garnishment interrogatories. But instead of continuing with the garnishment proceedings, Lee chose to initiate a lawsuit in the Third Judicial District Court for the State of Utah (State Court Lawsuit) naming McCardle, individually and as trustee of the Trust, as defendant. The State Court Lawsuit asserts three claims: (1) that McCardle exerted undue influence upon his mother, Ruth McCardle, to modify the Trust; (2) rescission of the modifications to the Trust based upon Ruth McCardle's mistaken understanding; and (3) McCardle's breach of fiduciary duty.

McCardle filed a motion for summary judgment on March 23, 2014. The state court granted McCardle's motion for summary judgment, awarded him attorney's fees, and entered an order dismissing Lee's claims (Dismissal Order). The Dismissal Order stated that it did not constitute the state court's final judgment and instructed McCardle to submit a declaration of attorney's fees and costs. McCardle submitted a Declaration of Attorney Fees and Costs and Proposed Final Judgment on March 25, 2014, and a Supplemental Declaration of Fees and Costs on April 11, 2014. The Debtors filed their bankruptcy petition on April 17, 2014.

On April 22, 2014, Lee filed a notice of bankruptcy stay in the State Court Lawsuit and informed McCardle's counsel that the State Court Lawsuit was stayed by virtue of the Debtors' bankruptcy. Notwithstanding the notice of bankruptcy, on May 29, 2014 the state court entered a final judgment and award of attorney's fees and costs (State Court Judgment). The State Court Judgment dismissed Lee's claims with prejudice, confirmed the earlier Dismissal Order, and entered the amount of attorney's fees awarded to McCardle in the principal judgment amount of

4

$41,889.00 and "all further attorney fees and costs incurred by [McCardle] in collecting the Principal Judgment Amount."[3]

**C. This Adversary Proceeding.**

The Lees commenced this adversary proceeding (Adversary Proceeding) on May 22, 2014. In their First Amended Complaint, the Lees allege that once the notice of stay was filed in the State Court Lawsuit, McCardle's actions in the State Court Lawsuit violated the § 362(a)(1) stay in the Peepleses' bankruptcy case. The Lees' complaint seeks a declaratory judgment that the State Court Judgment was void *ab initio*, and also seeks sanctions against McCardle and his attorneys.

The Lees filed a motion for summary judgment, which this Court denied. McCardle then filed a motion for summary judgment and request for an award of attorney's fees. The Court granted McCardle's motion for summary judgment and denied his request for attorney's fees. This memorandum decision supplements this Court's oral rulings with respect to the Lees' motion for summary judgment and McCardle's motion for summary judgment and request for attorney's fees to correctly reflect the Court's intention in determining this proceeding.

### III. ANALYSIS

**A. The State Court Lawsuit Was Not Subject to the Automatic Stay.**

The Lees contend that when the Peepleses filed bankruptcy, the State Court Lawsuit was stayed under § 362(a)(1). Section 362(a)(1) provides:

---

[3] Joint Statement of Undisputed Facts, Docket No. 72, ¶ 29.

>    (a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of –
>
> > (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title.

Because the State Court Lawsuit was not an action or proceeding against the Peepleses, the § 362(a)(1) stay would only apply if the State Court Lawsuit were an action or proceeding to recover a claim against the Peepleses.[4]

**1. Whether an Action or Proceeding Is Subject to the Automatic Stay Is Not Determined by a Party's Subjective Intent.**

Although not stated in so many words, the Lees' position appears to be that the State Court Lawsuit was stayed under § 362(a)(1) because Adrian Lee's subjective intent in bringing the State Court Lawsuit was "to recover a claim against the debtor." The Lees contend that it is undisputed that Adrian Lee initiated the State Court Lawsuit with the intention of recovering the judgment claims against Adam Peeples. They also argue that "[i]n view of the Congressional intent, and the case law, it is difficult to imagine that the intent of the actor has no relevance at all, and that it is not determinative when all parties (and the debtor) know what the intent is."[5] This statement can only be read to suggest that the Lees believe Adrian Lee's intent in bringing

---

[4] As the Lees state, "the question reduces to whether or not the Subject State Case was an action 'to recover a claim' against Adam Peeples that arose before April 17, 2014." Plaintiffs' Supplemental Briefing on the Issue of Whether the State Case Is an Action "To Recover a Claim Against the Debtor" Within the Meaning of 11 U.S.C. § 362(a)(1), Docket No. 78, at 2.

[5] *Id.* at 6.

the State Court Lawsuit is determinative of whether the State Court Lawsuit was an action to recover a claim against Adam Peeples and was therefore stayed under § 362(a)(1).

From the Lees' perspective, intent matters because of the statute's purpose. They contend that one of Congress's aims in drafting § 362(a) was to create a guide for all entities to apply in evaluating whether their actions run afoul of the automatic stay.[6] From this premise, the Lees make the claim that because many entities lack legal expertise, their intent must be the pole star by which they reckon whether they have drifted into proscribed waters.[7] The implicit conclusion is that because "non-legal personnel" must use their intent to evaluate their actions, that intent must be relevant to determining ultimately whether the automatic stay applies to a given action.

The Lees' argument fails for two reasons. In the first place, if an entity's intent were important in § 362(a), why would Congress go through all the trouble of drafting a detailed and complex statute that omits any mention of intent? Congress has extensive experience in drafting statutes that require intent as an element, so if Congress wanted entities' actions to be viewed through the lens of intent, one would expect to find in § 362(a) straightforward language to the effect that an entity's intent is determinative, or at least relevant, to the issue of whether the stay applies to an entity's particular actions. But the statute contains no such language. What the Lees propose as an explanation—that Congress omitted any reference to intent in § 362(a) but tacitly desired that it be relevant because it would be easier for entities to eschew "comprehensive legal

---

[6] The § 362 stay is commonly referred to as the "automatic stay."

[7] *See id.* The Lees ask the rhetorical question: "Are non-legal personnel (who could be subject to the stay regardless of whether they have legal representation) really expected to do comprehensive legal analysis in order to make the determination on whether or not they can act based on the merits of their case, whether or not they have standing, and other complex matters?" *Id.*

7

analysis" and use their intent as a kind of shorthand—cannot be credited. Merely because an entity may evaluate its actions through its intent does not elevate that intent to relevance for purposes of determining whether an entity's particular action is subject to the automatic stay.

Second, the Tenth Circuit has rejected the argument that an entity's subjective intent is relevant in the stay-violation context. The § 362 stay arises automatically by operation of law. A violation of the automatic stay may be only technical or it may be willful. The Tenth Circuit BAP has defined "willful" for purposes of § 362(k)[8] as conduct that is "volitional and deliberate" as opposed to "unintentional or accidental."[9] In *In re Johnson*,[10] the Tenth Circuit refined the definition of "willful" for purposes of § 362(k), holding "that in order to demonstrate a violation of § 362(k)(1), the debtor bears the burden of establishing, by a preponderance of the evidence, that the creditor knew of the automatic stay and intended the actions that constituted the violation, **no specific intent is required**."[11] Whether an actor intended the actions that constituted the violation is relevant to a determination of willfulness, but an actor's good faith belief, "no matter how reasonable," has no bearing on willfulness.[12] Critical to the *Johnson* analysis was the absence of a suggestion that an actor's subjective intent or good faith belief has any effect on the stay. Simply put, an actor's intent to violate the stay is not necessary to establish a stay violation. It therefore stands to reason that an actor's intent in taking measures

---

[8] The 2005 amendments changed § 362(h) to § 362(k).

[9] *In re Diviney*, 225 B.R. 762, 774 (10th Cir. BAP 1997).

[10] *In re Johnson*, 501 F.3d 1163, 1172-73 (10th Cir. 2007). The Tenth Circuit expressly acknowledged that the *Diviney* definition of willful was not incorrect.

[11] *Id*. at 1172. (emphasis added).

[12] *Id*. at 1173.

against a debtor is not necessary to establish the existence of the automatic stay. Instead, it is the objective nature of the action undertaken that determines whether the automatic stay applies to that action.

**2. Actions Are Not Subject to the Automatic Stay if They Assert Claims That Are Independent of Claims Against the Debtor.**

The Lees assert that "[i]t is legal error to require debtors to be a party to an action or proceeding in order for continuation of that action or proceeding to be prohibited by 11 U.S.C. § 362(a)(1)."[13] This Court is not suggesting that debtors must be parties to an action in order for the automatic stay to be applicable, but it is clear that an action against a non-debtor is not stayed simply because a creditor is attempting to recover a claim for which the debtor is liable. For example, other than the limited stay imposed under §§ 1201 and 1301, a creditor is not stayed from continuing an action against persons who are liable on a debt with the debtor. If § 362(a)(1) applies to actions against non-debtors, then the co-debtor stay set forth in §§ 1201 and 1301 would be unnecessary.

Another example of actions against non-debtors that are not stayed under § 362(a)(1) are actions against co-defendants. "It is clearly established that the automatic stay does not apply to non-bankrupt co-defendants of a debtor even if they are in a similar legal or factual nexus with the debtor."[14] This principle has been followed even when the action taken was against a former

---

[13] Plaintiffs' Response to Defendants' Motion for Summary Judgment, Docket No. 56, at 5.

[14] *Seiko Epson Corp. v. Nu-Kote Int'l, Inc.*, 190 F.3d 1360, 1364 (Fed. Cir. 1999) (internal quotation marks and citation omitted); *see also Teachers Ins. & Annuity Ass'n of Am. v. Butler*, 803 F.2d 61, 65 (2d Cir. 1986) ("It is well-established that stays pursuant to § 362(a) are limited to debtors and do not encompass non-bankrupt co-defendants.").

manager of the debtor who argued that "the real party in interest is the Debtor," and that the proceeding "would adversely affect the administration of the estate."[15]

These examples illustrate some of the automatic stay's boundaries, and bankruptcy courts lack jurisdiction to extend its scope to a non-debtor.[16] The Tenth Circuit further delineated the limits of the automatic stay:

> It would make no sense to extend the automatic stay protections to solvent co-defendants. They don't need it, and at the same time it would work a hardship on plaintiffs, by giving an unwarranted immunity from suit to solvent co-defendants. Extending the stay to protect solvent co-defendants would not advance either of the purposes underlying the automatic stay. Accordingly, we join the other circuit courts in concluding that 11 U.S.C. § 362 stays litigation only against the debtor, and affords no protection to solvent co-defendants.[17]

In *Valley Transit Mix of Ruidoso, Inc. v. Miller*,[18] the Tenth Circuit considered the scope of the automatic stay under § 362(a)(1). In *Valley Transit Mix*, a creditor, B.C.R., was required by state law to foreclose its mechanic's lien within one year of recording. The mechanic's lien arose as a result of construction work done by B.C.R. for the debtor on property the debtor leased from the Miller Group. The debtor filed Chapter 11 bankruptcy within one year from the date B.C.R. recorded its mechanic's lien. B.C.R. argued that its foreclosure action was stayed by § 362 and subject to the tolling provisions of § 108(c). The Miller Group argued that B.C.R.'s

---

[15] *Oklahoma ex rel. Oklahoma State Dep't of Health v. Medical Mgmt. Grp., Inc. (In re Medical Mgmt. Grp., Inc.)*, Nos. WO-03-004, 01-14494-WV, 2003 WL 21487310, at *4 (10th Cir. BAP June 27, 2003).

[16] *Bill Roderick Distrib., Inc. v. A.J. Mackay Co. (In re A.J. Mackay Co.)*, 50 B.R. 756, 760 (D. Utah 1985) ("The bankruptcy court had neither in rem nor in personam jurisdiction to protect [a third party] from his creditors.").

[17] *Fortier v. Dona Anna Plaza Partners*, 747 F.2d 1324, 1330 (10th Cir. 1984) (citations omitted).

[18] *Valley Transit Mix of Ruidoso, Inc. v. Miller*, 928 F.2d 354 (10th Cir. 1991)

enforcement period had expired because the automatic stay did not apply to B.C.R.'s efforts to foreclose its mechanic's lien against the Miller Group and therefore § 108(c) did not toll the statutory enforcement period. The Tenth Circuit held that:

> The stay provisions of section 362 are broad. The stay protects not only property of the estate but also prohibits "any act to collect . . . or recover a claim against the debtor . . ." Bankruptcy courts, construing section 362, have held that it precludes foreclosure of property when a debtor has a "leasehold" or "possessory" interest in the property and the debt sought to be satisfied out of the property is that of the debtor. **Here, B.C.R.'s foreclosure claim was based upon a debt incurred by [the debtor].** Therefore, B.C.R.'s foreclosure claim was stayed by section 362.[19]

The Tenth Circuit made clear that an action is stayed by § 362(a)(1) if the action is dependent upon the creditor's claim against the debtor. However, if the basis for the action is independent of the claim against the debtor, then the action is not stayed. Put another way, even though a creditor may have a claim against the debtor, a creditor is free to pursue its claim against a non-debtor so long as there is an independent basis for the creditor to pursue that claim.

### 3. The State Court Lawsuit Was Not Based Upon a Claim Against the Debtor.

The State Court Lawsuit asserted three causes of action based on McCardle's alleged wrongful conduct: (1) that McCardle exerted undue influence upon his mother, Ruth McCardle, to modify the Trust; (2) rescission of the modifications to the Trust based upon Ruth McCardle's mistaken understanding; and (3) McCardle's breach of fiduciary duty. Notwithstanding the Lees' extensive briefing, the analysis of the State Court Lawsuit clearly reveals it was not an action to recover a claim against the Peepleses.

In his amended complaint in the State Court Lawsuit, Lee alleged that he was the "legal successor in interest of Adam L. Peeples" and thus a "beneficiary" of the Trust. Assuming Lee is

---

[19] *Valley Transit Mix,* 928 F.2d at 356 (emphasis added) (citations omitted).

11

correct, and he had acquired Adam Peeples's interest, Lee was standing in Adam Peeples's shoes when he filed the State Court Lawsuit. In that case, the State Court Lawsuit was an action to recover Adam Peeples's claim against McCardle and the Trust, not Lee's action to recover a claim against the Peepleses.

The other alternative is that Lee did not acquire Adam Peeples's interest in the Trust prior to filing the State Court Lawsuit.[20] If Lee did not acquire Adam Peeples's interest in the Trust, Lee had no standing to assert Adam Peeples's claims against the Trust. Regardless of whether Lee had acquired Adam Peeples's interest in the Trust, the causes of action asserted in the State Court Lawsuit were not based upon claims against the Peepleses, but were claims directly against McCardle, and the State Court Lawsuit was not subject to the automatic stay.

**B. Defendants' Request for Attorney's Fees and Costs Should Be Denied.**

The Defendants seek an award against the Lees for their attorney's fees and costs incurred in this Adversary Proceeding. The Defendants raise three separate arguments seeking an award of fees and costs, to wit: (1) the bad faith exception to the American Rule; (2) the Utah Uniform Trust Code; and (3) the State Court Judgment.

**1. The Bad Faith Exception to the American Rule Is Inapplicable.**

The American Rule provides that each party is responsible for paying its own attorney's fees unless specific authority granted by statute or contract allows the assessment of those fees against the other party, or unless the bad faith exception is applied by the court. Under the bad faith exception to the American Rule, a court may award attorney's fees when a party's opponent acts "in bad faith, vexatiously, wantonly, or for oppressive reasons. A party acts in bad faith only

---

[20] It is undisputed that the Lees did not complete the garnishment proceeding.

when the claim brought is entirely without color and has been asserted wantonly, for purposes of harassment or delay, or for other improper reasons."[21] The bad faith exception "is a narrow one and may be resorted to only in exceptional cases. Hence, it is not surprising that attorneys' fees are awarded only when there is 'clear evidence' that challenged actions are taken entirely without color and are pursued for reasons of harassment or delay."[22] This Court found that none of the claims and legal contentions brought by the Lees were unwarranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law.[23] The pleadings and actions of the Lees do not fit the narrow exception to the American Rule, nor do the facts of this case call for an exception to the American Rule based upon dominating reasons of justice. The Defendants' motion for fees and costs will be denied as regards its argument based on the bad faith exception to the American Rule.

**2. The Utah Uniform Trust Code Is Inapplicable.**

The Defendants argue that they are statutorily entitled to an award of attorney's fees and costs pursuant to Utah Code Ann. § 75-7-1004(1), which states that: "[i]n a judicial proceeding involving the administration of a trust, the court may, as justice and equity may require, award costs and expenses, including reasonable attorney's fees, to any party, to be paid by another

---

[21] *Sterling Energy, Ltd. v. Friendly Nat'l Bank*, 744 F.2d 1433, 1435 (10th Cir. 1984) (internal quotation marks and citation omitted).

[22] *Federal Deposit Ins. Corp. v. Schuchmann*, 319 F.3d 1247, 1250 (10th Cir. 2003) (citation omitted); *see also United States v. McCall*, 235 F.3d 1211, 1216 (10th Cir. 2000) ("The bad faith exception is drawn very narrowly and may be resorted to only in exceptional cases and for dominating reasons of justice.") (internal quotation marks omitted).

[23] *See* Order Denying Defendants' Motion for Sanctions, Docket No. 50.

party or from the trust that is the subject of the controversy." The Court finds that Utah Code Ann. § 75-7-1004 is inapplicable. The questions of law addressed in this Adversary Proceeding focused on the scope of § 362(a) and whether or not the automatic stay was violated. This Court did not address questions "involving the administration of a trust," either directly or indirectly. The Defendants' motion for fees and costs will be denied as regards its argument under Utah Code Ann. § 75-7-1004.

### 3. The State Court Judgment Is Inapplicable.

The Defendants also seek an award of attorney's fees and costs citing to the award of attorney's fees found in the State Court Judgment. The State Court Judgment confirmed a judgment for attorney's fees and costs in the amount of $41,889.00 in favor of the Defendants and against Lee. The State Court Judgment states that the judgment may be "augmented . . . to encompass and include all further attorney fees and costs incurred by Defendants in collecting the Principal Judgment Amount."[24] This Adversary Proceeding was not commenced in an effort to collect upon the State Court Judgment. For that reason, the Court finds no authority upon which to award attorney's fees based on the State Court Judgment.

## IV. CONCLUSION

The Debtors did not claim any interest in the Trust in their bankruptcy schedules and statements. Neither the Debtors nor the bankruptcy estate were party to the State Court Lawsuit. The State Court Lawsuit was not a judicial action or proceeding against the Debtors, nor was it an effort to recover a claim against the Debtors. Count 1 of the Lees' complaint, which seeks a

---

[24] Joint Statement of Undisputed Facts, Docket No. 72, ¶ 29.

declaration that the State Court Lawsuit was stayed by the automatic stay, will be dismissed with prejudice.

Because the State Court Lawsuit was not stayed by the automatic stay, Count 2 of the Lees' complaint, which seeks judgment against the Trust under § 362(k), will be dismissed with prejudice.

Because the State Court Lawsuit was not stayed by the automatic stay and because § 362(k) is inapplicable, Count 3 of the Lees' complaint, which seeks judgment against McCardle personally under § 362(k), will be dismissed with prejudice.

Having found that the automatic stay was not applicable to the State Court Lawsuit and that § 362(k) is inapplicable, there is no basis upon which to award attorney's fees or sanctions, and therefore Count 4 of the Lees' complaint will be dismissed with prejudice.

The Court will deny the Defendants' motion for an award of attorney's fees and costs because the bad faith exception to the American Rule is inapplicable, the Utah Uniform Trust Code is inapplicable, and the State Court Judgment provides no authority for this Court to award attorney's fees.

For the reasons stated above, each party is to bear their own attorney's fees and costs.

_____END OF DOCUMENT_____

_____ooo0ooo_____

## DESIGNATION OF PARTIES TO RECEIVE NOTICE

Service of the foregoing **MEMORANDUM DECISION** shall be served to the parties and in the manner designated below.

**By Electronic Service:** I certify that the parties of record in this case as identified below, are registered CM/ECF users:

Adrian James Lee     alee@wnlaw.com, adranglee@msn.com,adrlee@aol.com
Daniel K. Brough     dbrough@btjd.com,
                      docketing@btjd.com;acarrico@btjd.com;kdunn@btjd.com

**By U.S. Mail:** In addition to the parties of record receiving notice through the CM/ECF system, the following parties should be served notice pursuant to Fed. R. Civ. P. 5(b).

- None